UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

REGAN GATTI                        CIVIL ACTION NO. 09-cv-0962

VERSUS                             JUDGE HICKS

WARDEN, LOUISIANA STATE            MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

A Bossier Parish jury convicted Regan Gatti ("Petitioner") of aggravated flight from an officer, attempted aggravated burglary, attempted second degree kidnaping, attempted second degree murder, and unauthorized entry of an inhabited dwelling.  He was sentenced to 163 years at hard labor.  The convictions were affirmed on direct appeal, but the sentence for attempted second degree kidnaping was vacated because it was illegally lenient, and that sentence was remanded.  State v. Gatti, 914 So.2d 74 (La. App. 2d Cir. 2005), writ denied, 926 So.2d 511 (La. 2006).  Petitioner also pursued a post-conviction application in the state court.

He now seeks federal habeas corpus relief on the grounds that (1) he was denied his right to testify and (2) his counsel was ineffective for entering into certain stipulations of fact, admitting that Petitioner did not have permission to enter a home, declined an offered admonition to the jury regarding other-crimes evidence, conceded to a charge of aggravated

flight from an officer, and failed to put the prosecution's case to a meaningful adversarial testing.

After initial review, the undersigned issued a Report and Recommendation (Doc. 11) and recommended that the petition be dismissed as time-barred.  Petitioner filed an objection (Doc. 12). He did not argue that his petition was timely.   Rather, he argued that the untimeliness should be excused based on equitable tolling. He pointed to  delay in his receipt of a state-court writ denial and the prison's loss of his legal materials during the time he was preparing his state post-conviction application.

Judge Hicks entered an order (Doc. 13) that, based on the objections, the matter was referred to the undersigned for further proceedings.  The State was directed to file an answer and a copy of the lengthy state-court record so that the court would have a complete record to review the issue of equitable tolling and, if necessary, the merits. The answer specifically asserts the defense that the petition is time-barred. After further consideration, and for the reasons that follow, it is once again recommended that Petitioner's petition be denied as untimely.

**Background Facts**

On March 13, 2003, at approximately 9:30 a.m., an armored car was making a delivery at a Hibernia Bank in Shreveport, Louisiana.  Four men, armed with AK-47 rifles and semi-automatic handguns, emerged from a Suburban. The men were dressed in black and wore ski masks and gloves.  Petitioner was one of those men. The robbers ordered the armored-car guards to the ground.

The robbers disarmed the guards, and two of the robbers held the guards at gunpoint. One guard was handcuffed, but Petitioner could not get the handcuffs on the second guard. The other robbers transferred $780,000 in cash from the armored car to the Suburban. The robbers drove the Suburban to a nearby apartment complex, transferred the money to a green Dodge Caravan, doused the Suburban with gasoline, and drove off in the van.  Residents of the apartment complex who saw the suspicious activity called 911 and reported the license plate number of the green van.

Shreveport City Police Office Mark Sharbono, who was in a marked squad car, spotted the van as it traveled east on Interstate 220 towards Bossier City.  As he pursued the van, one of the robbers blew out the back window of the van and began firing.  Officer Sharbono was shot in the left arm and forced to pull over. A fellow officer who had joined the chase continued to pursue the robbers.  Petitioner testified in his federal criminal trial that he was on the floor of the van with his head down while two of his co-defendants fired at the officer. But in this state court prosecution, Petitioner was convicted of aggravated flight from an officer, based on evidence that "Gatti was firing an AK-47 at the officer, ultimately forcing him off the road."  State v. Gatti, 914 So.2d at 85.

The van drove across the Red River into Bossier City and proceeded into a residential neighborhood where Larry Thompson, Jr. drove the van into the open garage of John Palmer's home.  The robbers got out of the van, and Petitioner tried to kick in the locked door of the home, but Mr. Palmer armed himself with a handgun and fired through the door.

The robbers scattered into the neighborhood, leaving behind bags of money, masks, gloves, bullet-proof vests, two-way radios, and several weapons.

Petitioner and two other robbers fled into to the home of William Walker, who was weeding his flowerbed, unaware of the invasion. Inside the home was Mrs. Rose Hagelmeier, his 93–year–old mother-in-law. The three demanded car keys from Mrs. Hagelmeier. She neither gave them keys nor did she attempt to look for any keys. Mr. Walker noticed something was amiss and went to investigate. He saw two men holding guns. Petitioner, still wearing a mask, pointed a gun at Walker, demanding keys to a vehicle. Walker said "no" and ran from the house, but one of the robbers overpowered him and threw him to the ground. Walker said the keys were in his truck. The men ran from the house.

All of the men except Petitioner were soon taken into custody. Shreveport police officers Scebern Willis and J.P. Creighton were among the many officers from various jurisdictions who searched the neighborhood. They found Petitioner, armed with a holstered 9 mm pistol and wearing a ski mask and bullet-resistant vest, hiding in the bushes outside Dr. Clint McAlister's home.  Officer Willis pointed a Remington 870 12-gauge pump shotgun at Petitioner and ordered him to get down on the ground.

Willis ordered Petitioner four times to get on the ground, but Petitioner only went down on his knees and sat back on his feet.  He kept rubbing his hands back and forth on his thighs, stared at Willis, and would not comply with any of Willis's numerous orders to get down on his stomach.  Petitioner placed his right hand on the top of his holstered pistol as

if he were about to draw it, so Willis fired a shot from his shotgun.  At the same time, Petitioner sprang to his feet and ran, and Willis fired four more rounds from his shotgun. Petitioner, Willis testified, returned fire at him, and the bullets hit the ground and threw dirt and rocks on Willis as he ran for cover behind a fence.  After Willis slid behind the fence, at least one more bullet came through the fence in his direction.  Petitioner denied firing at the officers.

Petitioner, who was hit twice by the officers, fired his pistol 13 times in this exchange, though some of the rounds were fired to shoot out a sliding glass patio door, to gain entry into the McAlister home. Petitioner used his cell phone to call 911 and tell them he was shot and wanted to surrender. The call was disconnected. Petitioner called one of the other robbers' cell phone, a policeman answered, and a surrender was arranged. Petitioner's blood-stained pistol, holster, extra magazines, bulletproof vest, gloves, and ski mask were found in a bedroom in the McAlister home.  The pistol had a fresh, fully loaded magazine containing 14 rounds, and one round was in the chamber.

A federal grand jury returned a four-count indictment for bank robbery and firearm crimes. All defendants except Petitioner pleaded guilty. Petitioner went to trial, was convicted on all four counts, and received a sentence of more than 40 years. He later filed a motion to vacate pursuant to 28 U.S.C. § 2255 that asserted several claims, including many theories of ineffective assistance of counsel. After an evidentiary hearing, the motion was denied. U.S. v. Gatti, 2010 WL 1049586 and 2010 WL 1039973 (W.D. La. 2010), affirmed,

U.S. v. Gatti, 434 Fed. Appx. 364 (5th Cir. 2011). The robbers were also indicted in Bossier Parish for several felonies. Petitioner was convicted of the state charges and received a sentence in excess of 150 years. The other robbers also pleaded guilty or were convicted, and they received lengthy prison sentences.

**Timeliness Calculations**

A one-year period of limitations applies to petitions for habeas corpus.  In an ordinary case, such as this one, the limitation period runs from the date on which the state court judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The first task, then, is to determine the date on which Petitioner's conviction became final after direct review.

Petitioner challenged his conviction on direct appeal to the intermediate appellate court and then filed an application for a discretionary writ to the Supreme Court of Louisiana, which denied the application on April 17, 2006. Petitioner did not file a petition for certiorari to the United States Supreme Court.  In these circumstances, Petitioner's conviction is deemed final and commences the running of the federal limitations period when the 90-day period for filing a petition for certiorari to the Supreme Court expires.  Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004); Wilson v. Cain, 2006 WL 3759686 (W.D. La. 2006). Thus, Petitioner's conviction became final for federal habeas purposes 90 days after the Supreme Court of Louisiana denied writs on April 17, 2006. That date is July 17, 2006.

The federal limitations clock began to tick on July 17, 2006, and it ran until Petitioner filed in the state court an application for post-conviction relief.   28 U.S.C. § 2244(d)(2) (a properly filed post-conviction application tolls the federal limitations period). All time that passed during the interim between finality of the conviction and the filing of the post-conviction application is counted against the one-year period. Flanagan v. Johnson, 154 F.3d 196, 199 n. 1 (5th Cir. 1998). The filing of the post-conviction application does not delay or restart the one-year period. Its effect is that the time during which it is pending is excluded from the one-year calculation. See Salinas v. Dretke, 354 F.3d 425, 428 (5th Cir. 2004).

A Louisiana prisoner's *pro se* post-conviction application is deemed "filed" when he delivers it to prison authorities for forwarding to the court.  LeBeuf v. Cooper, 2007 WL 1010296 (5th Cir. 2007) ("We have extended the mailbox rule to determine the filing dates for Louisiana postconviction relief PCR applications."), citing Causey v. Cain, 450 F.3d 601, 605-06 (5th Cir. 2006). Petitioner's  post-conviction application is stamped filed on July 11, 2007. There is no evidence of the date Petitioner tendered the application to prison officials for mailing, but the application is signed in three places with the date July 5, 2007. The court will grant Petitioner the benefit of any doubt and consider the application to have been filed the same day it was signed, July 5, 2007. That filing tolled the federal clock.

Assuming the post-conviction application was properly filed, 354 days passed between finality of the conviction and the tolling effected by the application. That left Petitioner 11 days to file a federal petition once the tolling effect ceased.

Petitioner's post-conviction application was denied by the state courts at all levels. The final step was when the Supreme Court of Louisiana denied an application for a discretionary writ on April 17, 2009. The Supreme Court has held that filing a petition for certiorari after the state's high court denies a post-conviction application does *not* continue the tolling effect of the application.  Lawrence v. Florida, 127 S.Ct. 1079 (2007).  The Fifth Circuit had already held that the 90 days during which a state habeas petitioner might petition the United States Supreme Court (if, as in this case, no petition were filed) is not included in determining the time that a post-conviction application tolls the federal limitations period. Ott v. Johnson, 192 F.3d 510, 512 (5th Cir. 1999).  Lawrence reinforces that holding. The 90-day certiorari period is counted when determining when a conviction is final (as discussed above), but differences in statutory language, as discussed in Lawrence, exclude the 90-day period from determining the tolling effect of a post-conviction application.

Thus, with 354 days already expired, the federal clock began to run again on April 17, 2009 when the Supreme Court of Louisiana denied an application for a discretionary writ with respect to the post-conviction application.  Petitioner had until April 28, 2009 to file his federal petition. It was received by the clerk of court on June 10, 2009, but the federal petition also benefits from a prisoner mailbox rule that deems it filed when the prisoner tenders it to prison officials for mailing to the district court.  Spotville v. Cain, 149 F.3d 374 (5th Cir. 1998).  The mailbox rule applies even if the prisoner, as did Petitioner, fails to pay the required filing fee at the time the petition is turned over for mailing.  Id. at 377.  The

envelope bears a postage-meter stamped date of June 8, 2009, but Petitioner signed and dated the petition June 4, 2009 in two places. The court will give him the benefit of all doubt and assume the petition was filed on the day it was signed, June 4, 2009.

A total of 48 days passed between April 17, 2009 and June 4, 2009. When those days are added to the 354 days that expired earlier, a total of 402 untolled days passed between the finality of Petitioner's conviction and the signing of his federal habeas petition. Thus, the federal petition was filed, at the earliest, approximately 37 days after the federal limitations period expired. The petition was untimely.

**Equitable Tolling**

When the undersigned originally recommended the petition be dismissed as untimely, Petitioner's objection did not disagree with the timeliness calculation. His only argument was that he is a candidate for equitable tolling because (1) his notice that the Supreme Court of Louisiana had denied his writ application on direct appeal was not received for about six weeks after the order issued and (2) he was without access to his legal papers for about seven months during the time before he filed his state post-conviction application.

The Supreme Court recently held that Section 2244(d) "is subject to equitable tolling in appropriate cases." Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights with "reasonable diligence" and (2) that some extraordinary circumstance stood in his way and prevented timely filing. Id. at 2562.

The prisoner in <u>Holland</u> was represented by counsel who failed to file a timely federal petition despite the prisoner writing many letters that repeatedly emphasized the correct deadline for filing. The attorney did no research to find the proper filing date, grossly miscalculated the filing date, and failed to timely inform the prisoner about the crucial fact that the state supreme court had decided the post-conviction application, all despite many pleas for that information.  On the very day the prisoner discovered that his attorney had let the federal clock expire, the prisoner prepared his own habeas petition and immediately filed it with the federal court.  The attorney's failure lost for his client what was likely his only opportunity for federal habeas review of the lawfulness of his conviction and death sentence. Even under those remarkable facts, the Supreme Court did not immediately conclude that equitable tolling was in order.  Rather, it remanded for further proceedings in light of the standard it announced.

Petitioner's objections are signed, but not sworn, and they are not supported by exhibits or other evidence to back the factual assertions made therein.  The court will nonetheless, for the sake of argument, accept the factual representations at face value. Petitioner states that at around the time the Supreme Court of Louisiana denied writs on April 17, 2006, he was a new arrival at Angola and placed in closed cell restriction without access to his legal work.  He received a letter from his appellate project attorney to inform him of the April 17 writ denial.  The letter was dated April 21, but it was not postmarked until June 3, and Petitioner did not receive it until June 4, 2006.  Petitioner complains that this "error"

caused him to lose time, which totaled 48 days. Petitioner overlooks the fact that his conviction was not considered final for federal purposes until 90 days after the April 17 writ denial on direct appeal. Accordingly, the one-year limitation period for filing a federal petition would not even start for more than 40 days after Petitioner received notice of the writ denial.

Petitioner states that he was released from closed cell restriction and assigned to Camp D shortly after he received the notice of the writ denial. On arrival in Camp D, he learned that all of his legal work had been lost. He states that he was diligent and filed a request for administrative remedy, but to no avail. He sought assistance from his family, and they paid the clerk of court the cost of copying the record, which they forwarded to Petitioner. He states that he was diligent in his efforts but lost approximately seven months during the time he had to prepare his state post-conviction application.

State law allows two years to file a post-conviction application, La. C.Cr.P. art. 930.8, but there is little hope of filing a timely federal petition if the state application is not filed within one year of finality of the conviction. Petitioner represents that, upon receiving the record, he had to comb the pleadings and transcripts for errors, format his claims, and put them to paper properly. He then managed to file his state application with 354 days of his federal time expired, leaving him 11 days after the post-conviction process ended to file a timely federal petition.

Petitioner argues that courts have found that prolonged delay by a state court in sending notice of a ruling that completes exhaustion of state court remedies can toll the federal limitations period.  He cites <u>Phillips v. Donnely</u>, 216 F.3d 508 (5th Cir. 2000), in which there was a four-month delay in the prisoner receiving notice of the denial of his state habeas application.  When the prisoner did get notice, he filed for an out-of-time appeal within three days, and he filed his federal petition within one month of the denial of the out-of-time appeal.  The federal petition would have been untimely, but the Fifth Circuit found that equitable tolling was appropriate in those exceptional circumstances.

The delay in notice did not have nearly the same effect in this case.  Petitioner received the tardy notice even before his state conviction was deemed final for federal purposes, so he had more than one year after notice arrived to either file a federal petition or file a state post-conviction application that would toll the federal limitations period.  There is nothing extraordinary about those circumstances that demand that the court exercise its equitable authority to disregard the limitation period set by Congress.  Petitioner implicitly argues that he should have the 48 days in which notice was delayed added to his limitations period, but that is not how equitable tolling works.  The limitations period is one year, which accommodates short delays in receiving notice (as are present in almost every case), days when the court record or a law library might not be available, days when a prisoner might be sick or locked down, or days when an inmate paralegal is not available to help.  The prisoner is not entitled to "add days" to the statutory period any time such an event occurs.  It is only

when one or more such events amount to extraordinary circumstances that prevent timely filing, despite the exercise of reasonable diligence, that equitable tolling is available.  The delay in notice does not warrant tolling in this case.

Petitioner's lack of access to the complete court record for approximately seven months during the time he was preparing his post-conviction application also does not warrant equitable tolling.  A similar argument was made in <u>Lloyd v. Van Natta</u>, 296 F.3d 630 (7th Cir. 2002).  The court agreed with other circuits to consider the issue that unavailability of a transcript does not allow equitable tolling to excuse an otherwise untimely petition. <u>See</u>, <u>e.g.</u>, <u>Donovan v. Maine</u>, 276 F.3d 87, 93 (1st Cir. 2002) (state court's delay in furnishing transcript did not establish a basis for equitable tolling);  <u>Gassler v. Bruton</u>, 255 F.3d 492, 495 (8th Cir.2001) (rejecting equitable tolling argument based on alleged delay in receipt of a transcript); and <u>Hall v. Warden</u>, 662 F.3d 745, 750-51 (6th Cir. 2011) (unavailability of or delay in receiving transcripts is not enough, alone, to entitle a habeas petitioner to equitable tolling). A complete record is certainly helpful, but not necessary, to file a collateral attack on a conviction.  The prisoner is almost always present at his trial and has observed firsthand the proceedings on which he might assert error.  In this case, Petitioner did eventually obtain the complete transcript and had several months to prepare and file a timely post-conviction application that tolled the federal limitations period.

The post-conviction application was pending in the state courts from July 5, 2007 until April 29, 2009, which is 664 days, or more than 22 months.  Petitioner had that entire time

to think about and prepare his federal petition, which would have to be filed within 11 days of the end of the post-conviction process.  Petitioner does not contend that he lacked access to the record or had any other obstacles or difficulties that prevented him, during those 22 months, from preparing his federal petition and having it ready to go when the final state writ application was denied.  It should have been fairly simple to do so. Any claim presented in the federal petition would first have to be exhausted in the state courts, meaning Petitioner would have already briefed on direct appeal or post-conviction application any claim that might be presented in the federal petition. He would not have to research or create any new issues within the 11 day period.

Petitioner has not presented the kind of extraordinary circumstances that would warrant tolling, and he has not shown that he acted with reasonable diligence.  Failure to be prepared to file a federal petition, with a 22-month head start, is not reasonable diligence. It may seem harsh to deny equitable tolling, when a prisoner can usually file only one federal petition, with such serious convictions and lengthy sentences at issue.  The Fifth Circuit has not hesitated, however, to reverse a district court that applied equitable tolling in a death penalty case, despite the blame for the untimeliness landing squarely at the feet of defense attorneys and circuitous proceedings in the state courts.  Manning v. Epps, ____ F.3d ____, 2012 WL 2899353 (5th Cir. 2012).  The Supreme Court also rejected equitable tolling in a death penalty case where the delay was blamed on mental incapacity of the prisoner and a

mistake by his counsel in calculating the filing deadline.  <u>Lawrence v. Florida</u>, 127 S.Ct. 1079 (2007).  Petitioner has not presented facts nearly so egregious as found in those cases.

Petitioner missed the deadline by only about 37 days, but the courts have "focused on the reasons for missing the deadline rather than on the magnitude of the tardiness." <u>Lookingbill v. Cockrell</u>, 293 F.3d 256, 264-65 (5th Cir. 2002) (no tolling when prisoner missed the deadline by only four days).  And the short 11-day period that was left untolled does not somehow warrant equitable tolling.  In <u>Ott v. Johnson</u>, 192 F.3d 510 (5th Cir. 1999), the prisoner filed his state habeas application one day before the expiration of the federal period, leaving only one day after completion of the state process to file a federal petition. The prisoner's attorney mailed his federal petition on the first business day after receiving notice of the denial of the state application.  It was, by then, untimely, but the Fifth Circuit affirmed the trial court's decision not to invoke equitable tolling.  <u>Lawrence</u> also presented a case where the state habeas filing tolled the federal limitations with just one day to spare. A federal petition filed 113 days later was neither timely nor entitled to equitable tolling. <u>Lawrence</u>, 127 S.Ct. at 1082.

The prisoner in <u>Fisher v. Johnson</u>, 174 F.3d 710 (5th Cir. 1999) made arguments similar to those presented in this case.  He filed his state habeas two days before the federal limitations period would expire. He claimed that he had not received notice of the new legislation that enacted the one-year limitation period until 43 days after its effective date, he spent 17 days of his limitations period confined in a special unit without his glasses or

legal materials, and he did not get notice of the state court writ denial until more than two days after that event. His federal petition was filed 17 days late.  The Fifth Circuit affirmed the district court's refusal to afford equitable tolling.  It reasoned that Congress knew the AEDPA would affect prisoners with limited access to outside information, but the legislation does not provide any tolling based on possible delays in notice.  Even after the prisoner learned of the new limitation period, he had over 300 days to complete his federal petition, which was more than enough time.  The brief period of incapacity during the limitations period was not a significant length of time and, more importantly, the prisoner still had over six months to complete his federal petition after his return to his usual quarters.

**Conclusion**

The federal petition was undeniably untimely.  The only question is whether Petitioner is entitled to equitable tolling.  None of the events about which he complains was extraordinary, and they did not prevent him from filing a post-conviction application with ample time to spare.  Petitioner then had almost two years to prepare a federal petition and be ready to hand it to prison officials for mailing within 11 days of denial of his state post-conviction application. Petitioner does not articulate any obstacles to his accomplishing that final step necessary to commence a timely federal habeas, but he missed his deadline by more than 30 days.  He has not demonstrated extraordinary circumstances or reasonable diligence.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** as untimely.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district

court to issue or deny a COA when it enters a final order adverse to the applicant. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S.Ct. 1595, 1604 (2000). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a COA should issue.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 24th day of July, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE